Appellants, Oscar and Martha Helms, are the owners of a forty-acre tract of land in DeKalb County, described as the NE 1/4 of the SE 1/4, Section 10, Township 7, Range 8, which they purchased in 1977 from Appellees Ida and Elizabeth Tullis. Between the land owned by the Helmses and the nearest public road, Highway 35, there is a one-acre lot located in the SE 1/4 of the SE 1/4 of Section 10, owned by the Tullises. The Helmses moved a house trailer onto their 40-acre tract, and sought to have electrical service furnished to their trailer by way of a power line to be run from the road over the one-acre tract owned by the Tullises. To accomplish this, Oscar Helms told a representative of the Sand Mountain Electric Cooperative that he owned the land all the way to the road. Relying on this representation, employees of the electric cooperative cut approximately twenty trees from the land owned by the Tullises in preparation for the power line to be run to the Helmses' trailer. When the Tullises became aware that trees were being cut on their land without their permission, they ordered the electric cooperative's employees to cease. The Helmses filed suit to enjoin the Tullises from further interference with the service of electrical power to the Helmses' property, and for damages. The trial court denied the injunction on the basis that Oscar Helms came into court with "unclean hands," since he precipitated the problem when he represented to the Sand Mountain Electric Cooperative that his land extended to the road. The Helmses now appeal that holding.
One of the time honored maxims of equity is that "He who comes into equity must come with clean hands." Anders v.Sandlin, 191 Ala. 158, 67 So. 684 (1914). Since the application of the clean hands doctrine is a matter peculiarly within the discretion of the trial court, Carter v. Carter, 282 Ala. 239,210 So.2d 800 (1968), we ordinarily would not disturb a trial court's holding based on the maxim. However, the doctrine should not be applied if its application would prevent relief as to other parties in interest to whom the maxim has no application. Steele v. Crute, 208 Ala. 2, 93 So. 694 (1922). In the present case, the trial *Page 255 
court ruled against the Helmses based on Mr. Helms's unclean hands. Mrs. Helms, however, was a co-plaintiff in the suit. There was no evidence whatsoever of any wrongdoing on her part. She, therefore, was a party in interest to whom the maxim had no application, and the trial judge should not have ruled against her on that basis. See, Steele v. Crute, 208 Ala. 2,93 So. 694 (1922).
The trial court, however, is not due to be reversed. The judgment on the basis of unclean hands is due to be affirmed as to Mr. Helms, due to his wrongful conduct. We have read the record to determine if the trial court was warranted in also holding against Mrs. Helms. We find that the judgment is correct as to Mrs. Helms also, since the plaintiffs are not entitled to the injunction sought under any circumstance. The only possible theory upon which they would be entitled to restrain an adjoining landowner from preventing the cutting of trees from the landowner's own property would be that an easement existed across adjoining lot for the purpose of running a power line. See, Oates v. Town of Headland, 154 Ala. 503,45 So. 910 (1908); Restatement of the Law of Property § 450 (1944). The record shows conclusively that the Helmses possessed no such easement.
There are several ways by which an easement may be acquired. These are: (1) by express conveyance, (2) by reservation or exception, (3) by implication, (4) by necessity, (5) by prescription, (6) by contract, and (7) by reference to boundaries or maps. See, R. Powell, Powell on Real Property ¶¶ 407-13 (abr. ed. 1968). An examination of the facts in the case before us fails to show that an easement was created under any theory.
The Helmses do not claim, nor did they seek to prove at trial, that an easement was created across the one-acre tract owned by the Tullises by conveyance, by reservation, by prescription, by contract or by reference to boundaries or maps. We will therefore not consider these methods of creating easements in our discussion.
The only remaining possible ways an easement could have been created in the case before us are by necessity and by implication. Creation by necessity is actually a form of creation by implication, but is treated separately by some authors. See R. Powell, Powell on Real Property ¶¶ 410-11 (abr. ed. 1968). See also II American Law of Property §§ 8.31-43 (A. Casner ed. 1952); Restatement of the Law of Property §§ 474-76 (1944).
The rationale for allowing an easement by necessity is that public policy demands that land not be rendered unusable. R. Powell, supra, ¶ 410. Under Alabama law, however, there must be a genuine necessity; mere convenience is not enough. Benedictv. Little, 288 Ala. 638, 264 So.2d 491 (1972); Roberts v.Monroe, 261 Ala. 569, 75 So.2d 492 (1954); Birmingham Trust Savings Co. v. Mason, 222 Ala. 38, 130 So. 559 (1930). The burden is on the one seeking to establish the easement to prove the easement is "reasonably necessary for the enjoyment" of the land. Roberts v. Monroe, 261 Ala. 569, 75 So.2d 492 (1954). Easements by necessity almost always involve access roads across the servient tenement connecting the dominant tenement to a public road or highway. See, Kirkland v. Kirkland,281 Ala. 42, 198 So.2d 771 (1967); Greenwood v. West, 171 Ala. 463,54 So. 694 (1911); Trump v. McDonnell, 120 Ala. 200, 24 So. 353
(1898). Original unity of ownership of the dominant and servient tenements is always required for an easement by necessity. Crawford v. Tucker, 258 Ala. 658, 64 So.2d 411
(1953).
Easements created by implication cover a variety of types of easements. Creation by this method requires not only original unity of ownership, Brewer v. Avinger, 208 Ala. 411, 94 So. 590
(1922), but also that the use be open, visible, continuous, and reasonably necessary to the estate granted. Birmingham Trust Savings Co. v. Mason, 222 Ala. 38, 130 So. 559 (1930); Walkerv. Clifford, 128 Ala. 67, 29 So. 588 (1901). The implication is that the parties implied such an easement because the grantee, having seen the use the grantor made of the property, *Page 256 
can reasonably expect a continuance of the former manner of use. R. Powell, supra, ¶ 411.
In the present case there is no easement created by either necessity or implication. The Helmses failed to show that there was no other route by which a power line could be brought to their property. Thus, there was no necessity. Furthermore, electrical service was not shown to be necessary to the reasonable enjoyment of the property, although it was shown to be necessary to one use of the property, i.e., as a site for a residence. There was no easement created by implication, since there had never been a power line run over that strip of land; thus there was no open, visible and continuous use.
Although the trial court erred in ruling against Mrs. Helms on the ground of unclean hands, the error was harmless, since Mrs. Helms failed to show any basis for recovery. The judgment of the trial court is therefore affirmed.
AFFIRMED.
MADDOX, JONES, SHORES and BEATTY, JJ., concur.